JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
THOMAS W. PORTS, JR.
601 D St. NW, 3rd Floor
Washington, D.C. 20004
Tel: (202) 305-0492
Fax: (202) 305-0506
thomas.ports.jr@usdoj.gov

Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANNA

| | |
|---|---|
| TAYLOR ENERGY CORPORATION LLC, | |
| Plaintiff, | CASE NO. 2:18-cv-14065 |
| v. | Honorable Jane Milazzo |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, | Magistrate Judge Michael North |
| Defendant. | |

**FEDERAL DEFENDANTS' RESPONSE TO TAYLOR ENERGY'S MOTION TO TRANSFER**

Federal Defendants submit the following response opposing Taylor Energy Corporation LLC's ("Taylor") Motion to Transfer in the Interest of Justice.

**INTRODUCTION**

This is one of five cases Taylor has filed seeking to challenge its regulatory obligation to fund remediation and the decommissioning of several of its wells, which the United States has

found continue to leak oil into the Gulf of Mexico.[1] Taylor now seeks to transfer this case to the Court of Federal Claims, arguing this Court lacks jurisdiction and that transfer is in the interest of justice. The Court of Federal Claims, however, has already ruled that Interior alone has the authority to determine when decommissioning is complete and that the Court of Federal Claims cannot release the funds Taylor seeks. Accordingly, if Taylor wishes to challenge the Interior Board of Land Appeals' decision, it must do so in district court under the Administrative Procedure Act. This Court has jurisdiction and transfer is not in the interest of justice.

## BACKGROUND

Taylor's related federal cases all arise from the destruction of an oil production platform in the Gulf of Mexico that was built in an undersea canyon, upon sediment known to be unstable, and which collapsed and was partially buried by a massive underwater mudslide triggered by Hurricane Ivan in 2004. After the platform's collapse, Taylor surveyed the area around its toppled platform, but took no actions to stop the oil leaks for three years. *See Taylor Energy Co. LLC v. United States*, No. 1:16-cv-12 (Fed. Cl.) ECF No. 11-6 at 29-31 [Ex. F at 16-19]. After the relevant leases terminated, pursuant to its regulatory authority, the Minerals Management Service ordered Taylor to permanently plug and abandon all of the wells at the collapsed platform site within one year. *Taylor Energy Co. LLC*, No. 1:16-cv-12 (Fed. Cl.) ECF No. 1 at 7, ¶ 16.

Taylor held numerous Federal Outer Continental Shelf Leases other than those affected by the platform collapse and, in 2008, Taylor sold and assigned all of the other leases. *Id.* at 8, ¶ 19. The Minerals Management Service required that Taylor use some of the proceeds from the

---

1. Two of the cases seek to enjoin the Coast Guard and its contractor from taking actions to stop the ongoing leak, and are pending in the Eastern District of Louisiana. Two other cases—filed in the Court of Federal Claims—have been dismissed.

sale of its other leases to fund decommissioning activities at the site of the collapsed platform. *Id.* Accordingly, in lieu of a bond and pursuant to regulatory requirements,[2] the parties created a lease-specific abandonment account (the "Trust Account") in order "to secure the funds Taylor [would need] to perform federally mandated decommissioning and related work," with Taylor as Settlor, Interior as Beneficiary, and JP Morgan Chase Bank, N.A. as Trustee. *Taylor*, No. 16-cv-12, 2019 WL 1529558, at *1 (Fed. Cl. Apr. 9, 2019). The Trust Account estimated the amounts it would cost to decommission Taylor's wells and to comply with other regulatory obligations, required Taylor to deposit certain amounts into the account, and provided for reimbursements to Taylor up to per-well caps and per-well activity caps set at the amount of the estimates. *See* ECF No. 1 at 5-7 (characterizing Trust Account). Taylor could recover these amounts only if Taylor completed the required work and was not reimbursed by insurance. *Id.*

On August 13, 2009, Taylor sent a letter to the Minerals Management Service proposing that Taylor "make the full final deposit into the Trust Account, required under Section 2.3, by September 21, 2009, without any offsets, and that [Taylor] be permitted to retain all insurance proceeds it has received and will receive in the future as reimbursement for work performed." ECF No. 1-2 at 1. The Minerals Management Service declined Taylor's proposal on August 28, 2009 (the "2009 Decision"). *Id.* It stated Taylor would need to (1) make the full deposit due the next month because Taylor had "not yet completed any phase of the 'work,' as defined by the Trust Agreement," and (2) reimburse the Trust Account for any disbursements Taylor received that duplicated reimbursement from Taylor's insurance company. *Id.* at 2. Regarding the second

---

2. As the Court of Federal Claims recognized, "Interior issued 'Bonding Orders' requiring Taylor to post security in the amount of $666,280,000 in accordance with 30 C.F.R. § 556.56 (2015). Interior and Taylor entered into th[e] Trust Agreement as the mechanism by which Taylor has complied with its regulatory bonding requirements. 30 C.F.R. § 556.901(d)." *Taylor Energy Co. LLC*, 2019 WL 1529558, at *1 n.1 (one citation omitted).

3

point, the Minerals Management Service said the reimbursement had the effect of retaining amounts reimbursed by insurance. *Id.* at 3. "[T]his result . . . compensates [the Minerals Management Service] for the risk it has taken that [Taylor] will be unable to complete the work required by the agreements, and [the Minerals Management Service] will need to complete it, likely at a higher expense than anticipated by the agreements." *Id.* at 2-3. Taylor timely appealed to the Interior Board of Land Appeals. ECF No. 1-4 at 7.

On August 15, September 6, and November 2, 2011, Taylor requested disbursement for rig down time from the Bureau of Ocean Energy Management (the "Bureau" or "BOEM"), a successor agency to the Minerals Management Service, which was then responsible for overseeing the Trust Account. The Bureau denied Taylor's request on November 7, 2011 (the "2011 Decision"). The Bureau agreed that rig down time was a reimbursable cost and that Taylor was entitled to reimbursement totaling $14,039,766 for work decommissioning five wells. ECF No. 1-3 at 2. It explained, however, that Taylor had received reimbursements and insurance proceeds that exceeded the per-well cap allowed for one of its other wells by $20,543,717.74. *Id.* at 2-3. Accordingly, on net, Taylor owed the Trust over $6 million, although the Bureau did not request reimbursement at that time. *Id.* Taylor timely appealed the 2011 Decision to the Interior Board of Land Appeals. ECF No. 1-4 at 12.

In a single consolidated opinion, the Interior Board of Land appeals affirmed both the 2009 and 2011 Decisions. ECF No. 1-4. It summarized the Decisions and its reasoning as follows:

> BOEM's 2009 and 2011 Decisions reflect a proper construction of the Agreements. BOEM interpreted the agreements as requiring the Trust Account to remain fully funded. As BOEM states:
>
>> The funds in the Trust Account are encumbered funds, to be used to fulfill Taylor's decommissioning obligations – obligations

4

> Taylor knowingly assumed when it became a lessee on its . . .
> [Outer Continental Shelf] leases. . . . BOEM has no access to the
> Trust [Account] funds for its own use. The money can only be
> expended to decommission the [offshore] . . . site. Withholding
> money in the Trust [Account] actually benefits Taylor by putting at
> Taylor's disposal funds to continue decommissioning the
> [offshore] . . . site, because Taylor continues to be obligated to do
> so.
>
> The ultimate aim of the Trust Account is to ensure that, regardless of the future
> financial solvency of Taylor or the availability of insurance proceeds from
> Taylor's private insurer, all of the work necessary to remove, plug and abandon,
> and otherwise fully decommission all of the wells, platform, pipeline, and other
> offshore facilities is completed. Once that work ends, the remaining funds in the
> Trust Account, including any and all funds that are not currently allocated to any
> future decommissioning work, will be returned to Taylor. We thus conclude that
> the 2009 and 2011 Decisions fully comport with the plain language and intent of
> the Agreements.

*Id.* at 19 (internal citations omitted).

On December 20, 2018, Taylor filed this suit seeking judicial review of the Interior Board of Land Appeals decision. ECF No. 1 at 2. Taylor now argues this Court lacks jurisdiction and moves to transfer its case to the Court of Federal Claims. ECF No. 30. Federal Defendants oppose.

## LEGAL STANDARD

28 U.S.C.A. § 1631 provides, in relevant part:

> Whenever a civil action is filed in a court . . . and that court finds that there is a
> want of jurisdiction, the court shall, if it is in the interest of justice, transfer such
> action or appeal to any other such court . . . in which the action or appeal could
> have been brought at the time it was filed or noticed . . . .

The Administrative Procedure Act ("APA") provides for judicial review in the federal district courts of certain agency actions. 5 U.S.C. §§ 701–06.[3] The Tucker Act provides that the

---

3. The APA does not provide an independent grant of subject matter jurisdiction, but the general federal question jurisdictional statute, 28 U.S.C. § 1331, confers authority on the district courts to hear APA cases.

5

Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C.A. § 1491. "[W]here the essence of the relief sought [is] not merely a claim for money owed, but [is] primarily an effort to define an ongoing relationship between the parties going forward, the district court [is] the appropriate forum to hear the claim." *Lummi Tribe of Lummi Reservation v. United States*, 99 Fed. Cl. 584, 596 (2011) (explaining *Bowen v. Massachusetts,* 487 U.S. 879 (1988)). In determining whether a suit belongs in a district court under the APA, or in the Court of Federal Claims under Tucker Act, the Court of Appeals for the Federal Circuit[4] asks primarily "can the Court of Federal Claims provide an adequate remedy under the Tucker Act for the alleged wrong?" *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1125 (Fed. Cir. 2007).

## ARGUMENT

The Court of Federal Claims cannot provide an adequate remedy through a money judgment because Taylor seeks more than a one-time payment—Taylor seeks to prospectively alter the way the Bureau of Ocean Energy Management exercises its regulatory authority concerning the disposition of Trust Account funds for decommissioning and remediation efforts. These decisions lie primarily with Interior, subject to judicial review in the appropriate district court.

---

4. The Court of Appeals for the Federal Circuit has exclusive jurisdiction over interlocutory appeals from orders on motions to transfer from a district court to the Court of Federal Claims. 28 U.S.C. § 1292(d)(4)(A).

In Taylor's prior suit challenging administration of the Trust Agreement, the court ruled in favor of the United States' argument that the Court of Federal Claims should reject Taylor's case because primary jurisdiction concerning the disposition of the account's funds for decommissioning and remediation efforts belongs with the Interior Board of Land Appeals. The Court of Federal Claims rejected Taylor's argument that "the court must separate Taylor's regulatory obligations under the Trust Agreement from its regulatory obligations under the [Outer Continental Shelf Lands Act]" and ruled it could not "second guess" the Interior Board of Land Appeals." *Taylor Energy Co. LLC*, 2019 WL 1529558, at *8-9.

In that case, as here, Taylor argued that it was simply presenting a breach of contract action that the Court of Federal Claims should decide. It asserted the case was "a basic contract breach case. We have the contract. [Taylor] believe[s] it's clear and unambiguous. We have the Government's conduct in May of 2015. That either is or is not a breach of contract." *Taylor Energy Co. v. United States*, No. 1:16-cv-12 ECF No. 23 at 19.  It also argued the United States "suggests that this trust agreement was done pursuant to regulation . . . that this trust agreement is a lease-specific abandonment account. It is not, Judge. The Government didn't need to enter into a private contract if it wanted to have Taylor post what's required by the regulations under a lease-specific abandonment account." *Id.* at 29. The Court of Federal Claims also recognized if it "cut to the chase" it "underst[ood] . . . [Taylor] believes that too much money is being held by the Government for too long a period of time and that [Taylor is] missing out on some amount of . . . the funding that they want." *Id.* at 31. The Court of Federal Claims nonetheless recognized the Trust Account is a lease-specific abandonment account that "implements Taylor's federal regulatory obligations under the [Outer Continental Shelf Lands Act]. . . .

7

including Taylor's obligation to retain adequate funding," ruled it must defer to Interior, and dismissed Taylor's claims. *Taylor Energy Co. LLC*, 2019 WL 1529558, at *8-9.

Taylor's proposed First Amended and Restated Complaint for Breach of Contract, ECF No. 30-6, demonstrates that Taylor would, at best, receive the same ruling from the Court of Federal Claims, dismissal for failure to state a claim that court can redress. Although again couched in breach-of-contract language, Taylor's claim is founded on the premise that "[t]he [Interior Board of Land Appeals] Decision affirming the 2009 Decision and the 2011 Decision of [the Bureau of Ocean Energy Management] are [sic] arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law." ECF No. 30-6 ¶ 36. This is an essential allegation in the complaint that Taylor proposes to file before the Court of Federal Claims, but that court cannot make such a finding. Indeed, Taylor makes several allegations essential to its complaint, which allegations the Court of Federal Claims has already ruled it cannot question and for which it must defer to the Interior Board of Land Appeals.

For example, Taylor alleges:

- The Decision "unlawfully withheld Taylor Energy's funds to 'secure' obligations that Taylor Energy had already completed." ECF No. 30-6 ¶ 9.

- "In essence, the 2011 Decision, like the 2009 Decision, improperly retains Taylor Energy's funds in the Trust Account to 'secure' the completion of 'Obligations' that Taylor Energy already fulfilled." *Id.* ¶ 30.

- The Interior Board of Land Appeals' conclusion "that the Trust Account needs to 'remain fully funded' is erroneous. This conclusion improperly requires that funds remain in the Trust Account despite 'not currently [sic] allocated to any future decommissioning work.'" *Id.* ¶ 32.

The Court of Federal Claims, however, has already ruled that it cannot second guess Interior's exercise of authority over funds deposited and managed to comply with regulatory decommissioning obligations:

> [U]nder the Trust Agreement Interior, as the Beneficiary, alone has the legal authority to determine when decommissioning will begin and when it is completed. Trust, Section 6.8. The [Interior Board of Land Appeals], on behalf of Interior, has determined that Taylor remains obligated to decommission its wells under federal law. Taylor has decided not to challenge the IBLA's decision. This court cannot second guess the IBLA and determine that Taylor's federal regulatory decommissioning obligations are impossible and thus Taylor should be relieved of those obligations including the obligation to keep its funds available under the Trust Agreement.

*Taylor Energy Co. LLC*, 2019 WL 1529558, at *8. In deferring to the Interior Board of Land Appeals' decision and noting "Taylor has decided not to challenge [its] decision," the Court of Federal Claims applied the doctrine of primary jurisdiction. That doctrine applies "where a claim is originally cognizable in the courts, but enforcement of the claim requires, or is materially aided by the resolution of threshold issues, usually of a factual nature, which are placed within the special competence of the administrative body." *Shaghitcoke Tribal Nation v. Kent School Corp. Inc.*, 595 Fed. Appx. 32, 34 (2d Cir. 2014) (internal marks omitted); *see also United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63-64 (1956). Faced with Taylor's proposed amended complaint, the Court of Federal Claims would again recognize it cannot grant Taylor the relief it seeks, and again need to dismiss Taylor's complaint for lack of jurisdiction or failure to state a claim. Transfer to facilitate this outcome, while favorable to the United States, is not in the interest of justice or judicial efficiency.

Taylor argues the Court of Federal Claims already determined it has jurisdiction over the Trust Agreement. But the Court of Federal Claims' jurisdictional discussion was limited to finding that the six-year statute of limitations—a jurisdictional bar—had not run. *Taylor Energy Co. LLC*, 2019 WL 1529558, at *5-6. The United States argued that the Court of Federal Claims could not grant Taylor the relief it requested pursuant to Rule 12(b)(6), which motion the Court granted. *Id.* at *7-8. Regardless of the procedural rule cited, the result is the same: the Court of

9

Federal Claims cannot provide Taylor an adequate remedy if Taylor wishes to challenge the agency's exercise of its authority over funds deposited and managed to comply with obligations under the Outer Continental Shelf Lands Act.

In support of its motion to transfer, Taylor relies primarily on *Amoco Production Co. v. Hodel*, 815 F.2d 352 (5th Cir. 1987). That case, however, dealt with a different section of the Outer Continental Shelf Lands Act, which triggered a different jurisdictional hook under the Tucker Act. There, "[o]n the basis of caselaw dealing with refund statutes, [the court found] section 10 of the [Outer Continental Shelf Lands Act] to be susceptible to fair interpretation as legislation that creates a right to monetary relief against the government, that is, that can fairly be interpreted as mandating compensation by the federal government." *Id.* at 360. Here, Taylor seeks to establish jurisdiction for a disbursement from a lease-specific abandonment account established under a different regulation, 30 C.F.R. § 256.56 (now at 30 C.F.R. § 556.901), that was promulgated pursuant to other sections of the Outer Continental Shelf Land Act. These regulations do not create a right to monetary relief before the Court of Federal Claims.[5] The laws and regulations at issue here empower Interior to ensure compliance with environmental and safety regulations on the Outer Continental Shelf—an area within its expertise—subject to judicial review under the APA.

---

5.    Relevant provisions of Outer Continental Shelf Lands Act include: 43 U.S.C. § 1332 (stating that the Outer Continental Shelf is to be developed "subject to environmental safeguards"); 43 U.S.C. § 1334 (authorizing Interior to promulgate regulations necessary to administer oil and gas leases on the Outer Continental Shelf and to issue rules and regulations to prevent waste and conserve the natural resources of the Outer Continental Shelf); 43 U.S.C. § 1348(a) (authorizing Interior to enforce safety and environmental regulations promulgated under the Outer Continental Shelf Lands Act); and 43 U.S.C. § 1348(b)(2) (stating that it is the duty of any lessee to "maintain all operations within such lease area or within the area covered by such permit in compliance with regulations intended to protect persons, property, and the environment on the Outer Continental Shelf.").

Moreover, after *Amoco*, the Supreme Court clarified that "where the essence of the relief sought [is] not merely a claim for money owed, but [is] primarily an effort to define an ongoing relationship between the parties going forward, the district court [is] the appropriate forum to hear the claim." *Lummi Tribe of Lummi Reservation v. United States*, 99 Fed. Cl. 584, 596 (2011) (explaining *Bowen v. Massachusetts,* 487 U.S. 879 (1988)).[6] Taylor's primary objective here goes beyond recovering a discrete amount. It seeks to define its ongoing relationship with the Bureau of Ocean Energy Management. Taylor seeks to have the Court of Federal Claims define when Taylor has completed work and how the Bureau manages the security required to ensure sufficient funds to complete Taylor's decommissioning and reclamation obligations. *See* ECF No. 1-4 at 19. This includes when the Bureau can require repayment of excess disbursements, thus maintaining adequate security, and when the Bureau must disburse amounts from the lease-specific abandonment account. *See id.* The Court of Federal Claims cannot provide the remedy Taylor seeks.

Taylor's other authority is also inapposite. For example, *Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991), dealt with a "request [for military] back pay, reinstatement, and correction of records." The case recognized that "[b]y statute, the Claims Court may, in appropriate military back pay cases, 'provide an entire remedy,' including 'restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records.'" *Id.* (quoting 28 U.S.C. § 1491(a)(2)). It also noted that the Court of Federal Claims "has extensive experience reviewing decisions of corrections boards in military pay cases." *Id.*

---

6.  Based on these later precedents, "[a]t least one federal circuit court has recognized that *Amoco* is no longer good law." *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 929 (9th Cir. 2008).

11

No such plenary statutory authority or expertise exists in the Court of Federal Claims regarding the management of safety and environmental regulations under the Outer Continental Shelf Lands Act. Those matters are within the expertise and discretion of Interior, subject to judicial review for an abuse of that discretion.

## CONCLUSION

Wherefore, Federal Defendants respectfully request this Court deny Taylor Energy's Motion.

Dated: May 14, 2019                     Respectfully Submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General

*/s/ Thomas W. Ports, Jr.*
Thomas W. Ports, Jr. (Va. Bar No. 84321)
Trial Attorney
601 D St. NW, 3rd Floor
Washington, D.C. 20004
Tel: (202) 305-0492
Fax: (202) 305-0506
thomas.ports.jr@usdoj.gov

*Attorney for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of May, 2019 I served a copy of the foregoing electronically via the court's ECF system on all counsel of record.

*/s/ Thomas W. Ports, Jr.*
Thomas W. Ports, Jr.
