# United States Court of Appeals for the Federal Circuit

---

**TAYLOR ENERGY COMPANY, L.L.C.,**
*Plaintiff-Appellee*

v.

**DEPARTMENT OF THE INTERIOR, SCOTT DE LA VEGA, IN HIS OFFICIAL CAPACITY AS ACTING SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, BUREAU OF OCEAN ENERGY MANAGEMENT,**
*Defendants-Appellants*

---

2020-1909

---

Appeal from the United States District Court for the Eastern District of Louisiana in No. 2:18-cv-14065-GGG-MBN, Judge Greg Gerard Guidry.

---

Decided: March 9, 2021

---

CARL D. ROSENBLUM, Jones Walker LLP, New Orleans, LA, argued for plaintiff-appellee. Also represented by ALIDA C. HAINKEL, LAUREN C. MASTIO; PAUL A. DEBOLT, Venable LLP, Washington, DC.

ROBERT J. LUNDMAN, Environment and Natural Resources Division, United States Department of Justice,

Washington, DC, argued for defendants-appellants. Also represented by JONATHAN D. BRIGHTBILL, ERIC GRANT.

_____

Before PROST, *Chief Judge*, PLAGER and O'MALLEY, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

Appellants, United States Department of the Interior, et al. (collectively, "Interior"), appeal the decision of the United States District Court for the Eastern District of Louisiana, transferring this case to the United States Court of Federal Claims ("Claims Court"). Order, *Taylor Energy Co. LLC v. United States Dep't of Interior*, No. 18-14065 (E.D. La. Mar. 31, 2020), ECF No. 71; J.A. 1–2 (*Transfer Order*). Because we hold that the Claims Court does not have subject matter jurisdiction over this case, we reverse and remand to the district court for further proceedings.

## I. BACKGROUND

### A. Factual Background

In 1994, Taylor Energy Company, LLC ("Taylor") became the lessee and operator of oil and gas properties in the Gulf of Mexico, located on the Outer Continental Shelf, offshore Louisiana. *Taylor Energy Co. LLC v. United States*, 975 F.3d 1303, 1307 (Fed. Cir. 2020). In 2004, Hurricane Ivan destroyed Taylor's offshore operations at the site, causing oil to leak from the wells into the waters of the Outer Continental Shelf. *Id.* at 1308. Three federal statutes—the Outer Continental Shelf Lands Act ("OCSLA"), the Clean Water Act, and the Oil Pollution Act—and their implementing regulations, require Taylor to decommission the site and stop the oil leaks. To comply with its statutory and regulatory obligations, Taylor and Interior developed a plan to decommission the wells and associated facilities.

Taylor's leases at the site terminated in June 2007, and it ultimately decided to leave the offshore oil production business in 2008. Pursuant to OCSLA regulations, Interior approved Taylor's assignments of its active leases to third parties on the condition that Taylor set aside part of the proceeds from those lease sales in order to provide sufficient funding for its decommissioning obligations. Although Interior's regulations generally provide for a bond to ensure sufficient funding of decommissioning obligations, 30 C.F.R. §§ 556.900(a)–(d), 556.901(d), the regulations also authorize Interior to accept equivalent financial assurances, *id.* § 556.904. Here, Interior required additional financial assurance and Taylor decided to establish and contribute to a "lease-specific abandonment account" in an amount equal to Interior's initial estimate of the decommissioning costs. *Taylor,* 975 F.3d at 1307–09.

Taylor and Interior entered into three agreements in 2008—the Trust Agreement, the Disbursement Agreement, and the Bond Agreement. These agreements addressed how Taylor would fund the trust account and how Interior would disburse payments from it. The Trust Agreement requires Taylor to comply with the regulatory decommissioning requirements. The Disbursement Agreement establishes procedures for approving and disbursing funds from the trust account. The Bond Agreement required Taylor to deposit $666,280,000 into the trust account, consistent with the cost estimate in the Trust Agreement. *Id.* at 1308–09. Taylor deposited that amount on the agreed upon schedule.

The agreements require Taylor to seek reimbursement from its insurance policies for work performed at the site and prevent Taylor from receiving payment from the trust account for costs covered by such reimbursement. The Trust Agreement specifically provides that "[n]o disbursements will be given for amounts reimbursed to [Taylor] by insurance proceeds." J.A. 28. The Bond Agreement further provides that "Taylor will not be entitled to payment under

the Trust Agreement for costs reimbursed by insurance companies," but that Taylor will be able to reduce or offset required deposits if the work is completed with insurance or other funds. J.A. 27–28. In compliance with the agreements, Taylor secured contracts, began decommissioning work, submitted insurance claims, and requested disbursement from the trust account.

In August 2009, Taylor sent a letter to Interior proposing that Taylor "make the full final deposit into the trust account," without any offsets, and "retain all insurance proceeds it has received and will receive in the future as reimbursement for work performed." J.A. 16. Interior rejected Taylor's proposal on August 28, 2009 ("the 2009 Decision"). The agency explained that Taylor: (1) must make the full deposit due because Taylor had "not yet completed any phase of the 'Work,' as defined by the Trust Agreement"; and (2) must reimburse the trust account for any disbursements Taylor received that duplicated reimbursement from Taylor's insurance company. J.A. 17. Taylor appealed the 2009 Decision to the Interior Board of Land Appeals ("IBLA"), seeking to compel Interior to accept Taylor's proposal to keep the proceeds of any future payouts under its insurance policies.

While its administrative appeal was pending, Taylor continued its decommissioning work, including plugging and abandoning wells and removing damaged equipment and debris. As the decommissioning progressed, Taylor temporarily suspended work pending assessment of certain risks. During the periods of suspension, Taylor incurred downtime costs associated with its decommissioned rig, because Taylor was required to pay its contractor when the rig was idle. J.A. 30.

In August 2011, Taylor sent a letter to Interior, requesting reimbursement from the trust account for rig downtime costs. Interior denied the request on November 7, 2011 ("the 2011 Decision"), finding that Taylor had been

overcompensated by the trust. Taylor timely appealed the 2011 Decision to the IBLA.

In a single consolidated opinion issued in October 2018, the IBLA affirmed Interior's 2009 and 2011 Decisions ("the IBLA Decision"). According to the IBLA, the agency's "2009 and 2011 Decisions reflect a proper construction of the Agreements." J.A. 41. The IBLA concluded that Interior properly denied: (1) Taylor's requests to retain insurance proceeds in lieu of offsetting them against the final supplemental deposits to the trust account; and (2) the disbursement of trust account funds for rig downtime costs. *Id.*

B. Related Case

In a related case involving the same Trust Agreement at issue here, Taylor filed suit against the government in the Claims Court in January 2016, asserting a variety of contract claims and alleging violation of Louisiana law. The government moved to dismiss that complaint under Rules 12(b)(1) and 12(b)(6). In particular, the government argued that the court lacked jurisdiction because the statute of limitations barred Taylor's claims.

The Claims Court dismissed Taylor's complaint for failure to state a claim in April 2019. *Taylor Energy Co. LLC v. United States*, 142 Fed. Cl. 601, 612 (2019). The court addressed and rejected the government's limitations argument, and thus denied the government's motion to dismiss under Rule 12(b)(1). *Id.* at 608–09. But the court dismissed Taylor's contract claims for failure to state a claim. In doing so, the court noted that the "IBLA, on behalf of Interior, has determined that Taylor remains obligated to decommission its wells under federal law." *Id.* at 611. The court noted that "Taylor has decided not to challenge the IBLA's decision" and explained that the court "cannot second guess the IBLA." *Id.* And the court rejected Taylor's argument that it "must separate Taylor's regulatory

obligations under the Trust Agreement from its regulatory obligations under the OCSLA." *Id.* at 612.

Taylor appealed the Claims Court's decision to this court, and we affirmed in September 2020. At the outset, we rejected "Taylor's attempt to disguise its regulatory obligations as contractual ones." *Taylor*, 975 F.3d at 1306. Although Taylor argued that Louisiana state law should control, we explained that, "[i]n the context of OCS-based claims, state law does not apply if federal law addresses the relevant issue." *Id.* at 1312. Because the issues underlying Taylor's claims were governed by federal law, we held that the Claims Court correctly dismissed for failure to state a claim.

In a footnote, we explained that "[a]n IBLA decision must be appealed to a United States district court" and that "[n]either the Claims Court nor this court is empowered to review IBLA decisions." *Id.* at 1311 n.6 (citing 5 U.S.C. §§ 701–706 and *Underwood Livestock, Inc. v. United States*, 89 Fed. Cl. 287, 290 (2009), *aff'd*, 417 F. App'x. 934, 939 (Fed. Cir. 2011)). We further noted that IBLA decisions have a binding effect on related lawsuits before the Claims Court. *Id.*

C. Procedural History

In December 2018, Taylor filed this action against Interior in the Eastern District of Louisiana, seeking judicial review of the IBLA's October 2018 final agency decision, which affirmed Interior's 2009 and 2011 Decisions. Specifically, Taylor filed suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, asking the district court to "[r]everse, set aside, and vacate the IBLA Decision affirming [Interior's] 2009 and 2011 Decisions" and to "[d]eclare that the 2009 Decision and 2011 Decision are arbitrary, capricious, contrary to law and an abuse of discretion." Complaint at 1 & 10, *Taylor Energy Co. LLC v. U.S. Dep't of the Interior*, No. 2:18-cv-14065 (E.D. La. Dec. 20,

2018), ECF No. 1; J.A. 4, 13. Taylor also asked the district court to instruct Interior to disburse the funds.

The same day that Taylor filed its complaint in district court, it filed a second complaint in the Claims Court, alleging breach of contract. That case involved the same operative facts as the district court case. In a footnote, Taylor informed the Claims Court that it had filed a substantially similar lawsuit against the same defendants in district court under the APA. Taylor stated that the district court case "was filed in an abundance of caution in the event jurisdiction in this Court under the Tucker Act is deemed to be improper" and that "Taylor Energy intends to seek a stay of the APA proceeding pending this Court's determination of subject matter jurisdiction." J.A. 207 n. 2.

In February 2019, the government moved to dismiss the Claims Court suit for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1500. The government explained that: (1) Taylor filed a "substantially similar" complaint in district court before it filed the complaint with the Claims Court; and (2) there is no dispute that the two suits have the same operative facts. In response, Taylor stipulated to dismissal of the Claims Court action without prejudice.

After the Claims Court dismissed Taylor's complaint pursuant to § 1500, Taylor moved to transfer the Louisiana district court action to the Claims Court. In doing so, Taylor argued that: (1) the district court does not have jurisdiction over Taylor's claims "because in essence the case is a breach of contract case involving the government's incorrect interpretation of agreements with Taylor"; and (2) because the Claims Court's April 2019 decision dismissed Taylor's claims in that case under Rule 12(b)(6)—not Rule 12(b)(1)—the court necessarily "found that it has subject matter jurisdiction to address claims under the Trust Agreement." Mtn. to Transfer at 6, *Taylor Energy Co. LLC v. U.S. Dep't of the Interior*, No. 2:18-cv-14065 (E.D. La. Apr. 26, 2019), ECF No. 30–1; J.A. 196.

Taylor attached to the transfer motion an amended complaint that it proposed to file in the Claims Court if the case were transferred. The proposed amended complaint asserted a breach of contract claim, not a claim filed pursuant to the APA, but the complaint continued to ask the court to "reverse, set aside, and vacate" the IBLA Decision. Specifically, the proposed complaint asked the court to "reverse, set aside, and vacate the IBLA Decision affirming [Interior's] 2009 and 2011 Decisions, which constituted separate breaches of the applicable contract between Taylor and the United States and award Taylor Energy monetary damages in the amount of $10,433,905.12 plus applicable interest." First Am. and Restated Complaint at 11, *Taylor Energy Co. LLC v. U.S. Dep't of the Interior*, No. 2:18-cv-14065 (E.D. La. Apr. 26, 2019), ECF No. 30–6; J.A. 329.

Interior opposed the transfer, arguing that the Claims Court had already determined that it must defer to the IBLA. The government maintained that, "if Taylor wishes to challenge the Interior Board of Land Appeals' decision, it must do so in district court under the [APA]." Resp. Mem. in Opp'n. at 2, *Taylor Energy Co. LLC v. U.S. Dep't of the Interior*, No. 2:18-cv-14065 (E.D. La. May 14, 2019), ECF No. 34; J.A. 351.

In a two-page order issued in March 2020—without the benefit of our September 2020 decision in the related case—the district court granted Taylor's motion to transfer. In doing so, the court stated that the issue presented was "whether it has subject matter jurisdiction over Taylor Energy's breach of contract claims asserted against the Federal Defendants." *Transfer Order* at 1. The court explained that "the Tucker Act . . . provides the exclusive basis for the assertion of contract claims against the United States." *Id.* And the court found "the reasoning set forth by the Court of Federal Claims" in the April 2019 decision—"to be controlling." *Id.* The district court therefore transferred the case to the Claims Court.

Interior timely appealed the district court's transfer order to this court. We have jurisdiction under 28 U.S.C. § 1292(d)(4)(A).

## II. DISCUSSION

"Our review of the district court's decision granting or denying transfer of an action to the Court of Federal Claims is de novo because the district court's underlying determination is one of jurisdiction." *Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1332 (Fed. Cir. 2007).

The federal transfer statute provides that a case may be transferred to a "court in which the action or appeal could have been brought." 28 U.S.C. § 1631. The propriety of the transfer order at issue here turns on whether this case properly belongs before the district court under the APA, or before the Claims Court under the Tucker Act, 28 U.S.C. § 1491.

The APA provides for judicial review of certain agency actions in the federal district courts. 5 U.S.C. §§ 701–706. Specifically, the APA provides for judicial review of final agency actions if "there is no other adequate remedy in a court," *id.* § 704, and if the plaintiff is "seeking relief other than money damages," *id.* § 702. The Tucker Act, on the other hand, provides the Claims Court jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act itself does not create any substantive right to monetary damages. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Rather, a plaintiff must plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000).

On appeal, Interior maintains that the district court erred in transferring this case to the Claims Court because "judicial review of the IBLA decision may proceed *only* in district court." Appellants' Br. 15. Specifically, Interior argues that, because the IBLA Decision is binding on the Claims Court, the court cannot provide Taylor with an "adequate remedy," and Taylor's only option for judicial review is in district court under the APA.[1] As explained below, Interior is correct.

In determining whether a suit belongs in a district court under the APA, or in the Claims Court under the Tucker Act, the question is "can the Court of Federal Claims provide an adequate remedy under the Tucker Act for the alleged wrong?" *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1125 (Fed. Cir. 2007). We have held that, "if a Tucker Act suit in the Court of Federal Claims provides an adequate remedy, APA review in the district court is not available." *Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997).

---

[1] Interior also argues that the district court erred in finding the Claims Court's April 2019 opinion dismissing Taylor's complaint "controlling" on jurisdiction. We agree. The court's jurisdictional analysis in that earlier case was limited to finding that the six-year statute of limitations—a jurisdictional bar—had not run. *Taylor,* 142 Fed. Cl. at 612. Notably, Taylor did not challenge the IBLA's decision in that case, and thus the court did not expressly address the jurisdictional issue presented here. *See id.* at 611 ("Taylor has decided not to challenge the IBLA's decision."). It is well established that, "[w]hen an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." *Nat'l Cable Television Ass'n, Inc. v. Am. Cinema Eds., Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991).

Here, the record is clear that the Claims Court cannot provide an adequate remedy. In its proposed First Amended and Restated Complaint for Breach of Contract, Taylor purports to assert a breach of contract claim, but asks the Claims Court to "reverse, set aside, and vacate the IBLA Decision affirming BOEM's 2009 and 2011 Decisions" on grounds that they were "arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law." First Am. and Restated Complaint at 11, *Taylor Energy Co. LLC v. U.S. Dep't of Interior*, No. 2:18-cv-14065 (E.D. La. Apr. 26, 2019), ECF. No. 30-6; J.A. 329.

As we recently noted, judicial review of IBLA decisions may proceed only in district court under the APA. *Taylor*, 975 F.3d at 1311 n.6. Specifically, we explained that "[n]either the Claims Court nor this court is empowered to review IBLA decisions." *Id.* (citing *Underwood Livestock, Inc. v. United States*, 89 Fed. Cl. 287, 290 (2009), *aff'd*, 417 F. App'x 934, 939 (Fed. Cir. 2011)). We further noted that "both this court and the Supreme Court have recognized the binding effect of IBLA decisions on related lawsuits before the Claims Court." *Id.* (citing *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422–23 (1966), and *Aulston v. United States*, 823 F.2d 510, 514–15 (Fed. Cir. 1987)). Because the Claims Court must accept the IBLA Decisions affirming Interior's actions—and thus cannot "set aside" those agency decisions as Taylor requests—the Claims Court cannot provide Taylor with an "adequate remedy."

In *Aulston*, for example, we determined that the Claims Court "properly held that it lacked the power to decide appellants' Fifth Amendment taking case in its present procedural posture in view of the [IBLA's] prior adjudication that appellants had no ownership rights." 823 F.2d at 511. That is, "where the administrative agencies of the Interior Department have decided [the factual question at issue], the Court of Claims could not review or overturn that administrative determination even though that court

indisputably had jurisdiction over 'taking' claims." *Id.* at 514. We further explained that "[t]he authority to review Interior's administrative decision lay initially in the district courts and then in the regional courts of appeals." *Id.*

Taylor seeks to distinguish *Aulston* on grounds that it involved a taking claim, rather than a contract claim. But nothing in *Aulston* suggests that its application is so limited. Claims founded either upon the Fifth Amendment or on an alleged contract with the government may generally be filed in the Claims Court under the Tucker Act. Importantly, however, the Claims Court may not award any "adequate relief" for either type of claim when there is a controlling and contrary IBLA decision, as is the case here.

Taylor cites the Claims Court's decision in *Griffin & Griffin Exploration, LLC v. United States*, 116 Fed. Cl. 163 (2014), for the proposition that courts "regularly find that the [Claims Court] has exclusive jurisdiction over cases involving a claim for money damages arising out of a contract, even when reviewing an administrative decision, like the IBLA decision at issue here." Appellee's Br. 26. In *Griffin*, the plaintiffs sought damages arising out of the government's alleged breach of contract involving two oil and gas leases. 116 Fed. Cl. at 167. The Bureau of Land Management ("BLM") determined that the Griffin leases were improperly issued because of a prior lease for the same property. BLM canceled the leases and the IBLA affirmed the BLM's decision. *Id.* The plaintiffs filed suit in the Claims Court alleging breach of contract and seeking over $30 million in damages. *Id.* The court found that it had subject matter jurisdiction over the breach of contract claim. Although the court agreed with the government that "Congress has invested the federal district courts with exclusive jurisdiction to review IBLA decisions pursuant to the [APA]," and agreed that "the IBLA's findings in this case are fatal to one aspect of plaintiffs' contract claims," the court found that "the government's arguments regarding the binding nature of the IBLA's determinations do not

go to this Court's subject matter jurisdiction over plaintiffs' contract claims; they go to the merits of those claims." *Id.* at 172.

As the government points out, *Griffin* is not binding on this court, and does not address the issue of "adequate remedy." To the extent *Griffin* suggests that the Claims Court has jurisdiction where there is an IBLA decision addressing and resolving the exact issue on which the plaintiff bases a contract claim, it is incorrect. We have recently clarified that the Claims Court cannot provide adequate relief in these circumstances. *Taylor*, 975 F.3d at 1311 n.6. Because the IBLA decision is binding on the Claims Court, and may not be reviewed by the Claims Court, the court cannot provide an "adequate remedy." Only the district court has jurisdiction over a challenge to an IBLA decision.

Taylor also cites the Fifth Circuit's decision in *Amoco Production Co. v. Hodel*, 815 F.2d 352 (5th Cir. 1987), for the proposition that, "even though this suit involves review of an administrative decision . . . it is fundamentally a breach of contract suit in which Taylor Energy seeks recovery of $10,433,905.12 in monetary damages." Appellee's Br. 29–30. *Amoco* involved "a dispute over the valuation of royalties due [to] the federal government from a gas lease on the Outer Continental Shelf." 815 F.2d at 353. Amoco filed suit in district court, seeking declaratory and injunctive relief from a decision of the IBLA affirming Interior's "assessment of extra royalties and penalties due for gas produced and sold by Amoco from a lease off the Louisiana shore." *Id.* The government moved to dismiss for lack of subject matter jurisdiction, arguing that Amoco's claim was actually a disguised claim for a money judgment in excess of $10,000, and that therefore jurisdiction was proper in the Claims Court pursuant to the Tucker Act. *Id.* The district court denied the motion to transfer and found in favor of the government on the merits.

On appeal, the Fifth Circuit in *Amoco* found that the district court lacked jurisdiction, vacated the judgment of the district court, and remanded with instructions to transfer the case to the Claims Court. *Id.* at 354. In doing so, the court explained that the provision of the OCSLA at issue there—43 U.S.C. § 1339—"creates a right to monetary relief against the government, that is, that can fairly be interpreted as mandating compensation by the federal government." *Id.* at 360. Because the OCSLA itself created a right to receive compensation from the federal government, the Tucker Act provided for jurisdiction in the Claims Court. *Id.*

Unlike *Amoco*, here, the OCSLA provisions at issue impose a regulatory duty on Taylor—the obligation to decommission the site. The Trust Agreement is a "regulatory instrument in its entirety," not a contract that provides Taylor with a remedy for breach by the government. *Taylor*, 142 Fed. Cl. at 612 ("[T]he Trust Agreement implements Taylor's federal regulatory obligations under the OCSLA . . . including Taylor's obligation to retain adequate funding."); *see also Anderson v. United States*, 344 F.3d 1343, 1356–57 (Fed. Cir. 2003) (holding that regulatory boilerplate provisions, added by the government as a regulator, are not contracts). And, as the IBLA determined, the trust account is a "lease-specific abandonment" account that serves to provide security for the performance of that obligation. *Taylor*, 975 F.3d at 1311 (noting that "the IBLA characterized the trust account as a 'lease-specific abandonment account'"). Neither the provisions of OCSLA at issue nor Interior's regulations contain any language "mandating compensation" or otherwise providing a right to monetary damages.

Although Taylor captions its proposed amended complaint as a breach of contract claim, the allegations contained therein, as well as the relief requested, reveal that Taylor is, in fact, seeking APA review of the agency's actions. Taylor expressly asks the court to reverse, set aside,

and vacate the IBLA Decision. As Interior points out, "[i]f Taylor were to establish in district court that it is entitled as a matter of law to the requested relief, including an order instructing Interior to disburse the funds, then the district court would have jurisdiction to award that relief or to set aside Interior's decisions or to remand to Interior, as appropriate." Appellants' Br. 23. In contrast, the Claims Court is bound by the IBLA Decision and thus cannot award Taylor the relief it seeks. Because Taylor is challenging the IBLA Decision, it must do so in district court under the APA.

## III. CONCLUSION

For the reasons explained above, the Claims Court does not have jurisdiction over this case. We therefore reverse the transfer order and remand to the district court for further proceedings.

**REVERSED AND REMANDED**

COSTS

No costs.